**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF WEST VIRGINIA**

**SAMUAL KEITH WILDER,**

                Plaintiff,

v.                                                        Civil Action No. 2:14cv24
                                                          (Judge Bailey)

**OFFICER E. PAYNE, et al.,**

                Defendants.

## REPORT AND RECOMMENDATION

### I. Background

On March 6, 2014, Samuel Keith Wilder, the *pro se* plaintiff, who is a federal prisoner incarcerated at FCI Gilmer, initiated this case by filing a Bivens action in the United States District Court for the Southern District of Ohio against seven correctional officers employed at that facility. (Dkt. No. 1). On April 2, 2014, the case was transferred to this court. (Dkt. No. 5). On that same, the Clerk of Court issued a Notice of Deficient Pleading. (Dkt. No. 8), and on April 3, 2014, issued an Amended Notice of Deficient Pleading. (Dkt. No. 9). On April 17, 2014, the plaintiff filed his complaint on this court's court-approved form. (Dkt. No. 12). On April 21, 2014, the plaintiff was granted leave to proceed without prepayment of fees. (Dkt. No. 16), and on May 5, 2014, the plaintiff paid the required initial partial filing fee. This case is before the undersigned for an initial review and report and recommendation pursuant to LR PL P 2 and 28 U.S.C. §§ 1915A and 1915(e).

### I. The Complaint

In his complaint, the plaintiff alleges multiple instances of sexual harassment by correctional officers at FCI Gilmer dating back to October of 2011. All of the claims refer to sexually suggestive comments made by the various officers up to and including January of 2014. There are no allegations of any inappropriate physical contact by any correctional officer.

In completing the form complaint, the plaintiff acknowledges that there is a grievance procedure at FCI Gilmer and further acknowledges that he did not file a grievance concerning the facts relating to this complaint. The plaintiff notes that "[d]ue to retaliation against me and my knowledge of the remedy process by being in prison for almost 12 years, I know that my complaints would not be taken serious. I sent all of my complaints to Senator Rockefeller, I also sent some of the complaints through the computer system to PREA and the Office of Inspector General. After being at this prison for more than five years, I know that I did not trust the Captain, SIS, or any Official working here to take up my cause, so I sent my complaints outside the prison." (Dkt. No. 12, p.11).

## II. Standard of Review

Because the plaintiff is a prisoner seeking redress from a governmental entity or employee, the Court must review the complaint to determine whether it is frivolous or malicious. Pursuant to 28 U.S.C. § 1915A(b), a court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous if it is without arguable merit either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989). However, the court must read *pro se* allegations in a liberal fashion. Haines v. Kerner, 404 U.S. 519, 520 (1972). A complaint which fails to state a claim under Fed.R.Civ.P. 12(b)(6) is not automatically frivolous. See Neitzke at 328. Frivolity dismissals should only be ordered when the legal theories are "indisputably meritless,"[1] or when the claims rely on factual allegations which are "clearly baseless." Denton v. Hernandez, 504

---

[1] Id. at 327.

U.S. 25, 32 (1992). This includes claims in which the plaintiff has little or no chance of success. See Estelle v. Gamble, 429 U.S. 97, 106 (1976).

III. Analysis

**A. Exhaustion of Administrative Remedies**

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). A Bivens action, like an action under 42 U.S.C. § 1983, is subject to the exhaustion of administrative remedies. Porter v. Nussle, 534 U.S. 516, 524 (2002). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,"[2] and is required even when the relief sought is not available. Booth, at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted prior to filing a complaint in federal court. *See* Porter, at 524 (citing Booth, 532 U.S. at 741) (emphasis added).

Moreover, in Woodford v. Ngo, 548 U.S. 81, 84-85 (2006), the United States Supreme Court found that the PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate unwarranted federal court interference with the administration of prisons"; (2) to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case"; and (3) to "reduce the quantity and improve the quality of prisoner suits." Therefore, "the PLRA exhaustion requirement requires full and proper exhaustion." Woodford, at 92-94 (emphasis added). Full and proper exhaustion includes meeting all the time and procedural requirements of the prison grievance system. Id. at 101-102.

---

[2] Id.

3

The Bureau of Prisons provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8). See 28 C.F.R. § 542.10, et seq. If the prisoner achieves no satisfaction informally, he must file a written complaint to the warden (BP-9), within 20 calendar days of the date of the occurrence on which the complaint is based. If an inmate is not satisfied with the warden's response, he may appeal to the regional director of the BOP (BP-10) within 20 days of the warden's response. Finally, if the prisoner has received no satisfaction, he may appeal to the Office of General Counsel (BP-11) within 30 days of the date the Regional Director signed the response.³ An inmate is not deemed to have exhausted his administrative remedies until he has filed his complaint at all levels. 28 C.F.R.§ 542.10-542.15; Gibbs v. Bureau of Prison Office, FCI, 986 F.Supp. 941, 943 (D.Md. 1997).

In Jones v. Bock, 549 U.S. 199 (2007), the United States Supreme Court ruled, among other things, that an inmate's failure to exhaust under the PLRA is an affirmative defense, and an inmate is not required to specifically plead or demonstrate exhaustion in his complaint. Nonetheless, pursuant to the Court's authority under 28 U.S.C. § 1915, it not foreclosed from dismissing a case *sua sponte* on exhaustion grounds, if the failure to exhaust is apparent from the face of the complaint. See Anderson v. XYZ Prison Shealth Services, 407 F.3d 674, 681-82 (4th Cir. 2005). Here the failure to exhaust is admitted by the plaintiff. He attempts to justify this

---

³ "If accepted, a Request or Appeal is considered filed on the date it is logged into the Administrative Remedy Index as received. Once filed, response shall be made by the Warden or CMM. within 20 calendar days; by the Regional Director within 30 calendar days; and by the General Counsel within 40 calendar days...If the time period for response to a Request or Appeal is insufficient to make an appropriate decision, the time for response may be extended once by 20 days at the institution level, 30 days at the regional level, or 20 days at the Central Office level. Staff shall inform the inmate of this extension in writing. Staff shall respond in writing to all filed Requests or Appeals. If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.

failure by stating that he knew his complaints would not be taken seriously and also refers to "retaliation."

There are exceptions to the requirement that an inmate initially file a grievance at the institution level. Particularly, 28 C.F.R. § 542.14(d)(1) provides:

> Sensitive issues. If the inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the Request became known at the institution, the inmate may submit the Request directly to the appropriate Regional Director. The inmate shall clearly mark "Sensitive" upon the Request and explain, in writing, the reason for not submitting the request at the institution. If the Regional Administrative Remedy Coordinator agrees that the Request is sensitive, the Request shall be accepted. Otherwise, the Request will not be accepted, and the inmate shall be advised in writing of that determination, without a return of the Request. The inmate may pursue the matter by submitting an Administrative Remedy Request locally to the Warden. The Warden shall allow a reasonable extension of time for such a resubmission.

Here, the plaintiff did not pursue this procedure and provides no specific explanation for why he did not.

Finally, the undersigned acknowledges that despite the fact that the Supreme Court has stated that it "will not read futility or other exceptions into statutory exhaustion requirements," Booth, 532 U.S. at 741, n.6, several courts have found that the mandatory exhaustion requirement may be excused in certain limited circumstances. See Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir. 2004) (defendant may be estopped from asserting exhaustion as a defense when defendant's actions render grievance procedure unavailable); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003) (summary dismissal for failure to exhaust not appropriate where prisoner was denied forms necessary to complete administrative exhaustion); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001) (remedy not available within meaning of § 1997e(a) when prison officials prevent a prisoner from utilizing such remedy); Aceves v. Swanson, 75 F. App'x 295, 296 (5th Cir. 2003) (remedies are effectively unavailable where prison officials refuse to give inmate grievance forms upon request). Indeed, the Fourth Circuit has held that "an

5

administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008).

Furthermore, a number of courts of appeals have held that prison officials' threats of violence can render administrative remedies unavailable. See, e.g., Turner v. Burnside, 541 F.3d 1077, 1085 (11th Cir. 2008); Kaba v. Stepp, 458 F.3d 678, 686 (7th Cir. 2006); Hemphill v. New York, 380 F.3d 680, 688 (2d Cir. 2004). But see Larkin v. Galloway, 266 F.3d 718, 723-24 (7th Cir. 2001) (failure to exhaust not excused because plaintiff was afraid of retaliation). For threats or intimidation to render administrative remedies unavailable, they must typically be substantial and serious enough that they would deter a similarly situated prisoner of ordinary fitness from pursuing administrative remedies. See Turner, 541 F.3d at 1085; Kaba, 458 F.3d at 684-86; Hemphill, 380 F.3d at 688.

Here, the plaintiff has made no claim that prison officials prevented him from exhausting his administrative remedies. In addition, to the extent that the plaintiff may be alleging that he feared retaliation if he attempted the administrative remedy process, thereby relieving him of the obligation to exhaust his administrative remedies, the undersigned finds that he has presented no claim that is substantial and serious enough that would deter a similarly situated prisoner of ordinary fitness from pursuing administrative remedies. Rather, the plaintiff makes a mere conclusory statement without substantive facts. Therefore, this matter should be dismissed for failure to exhaust administrative remedies. Moreover, even if the Court were inclined to find that the plaintiff should be excused from exhaustion, his complaint fails to state a claim upon which relief can be granted.

**B. Failure to State a Claim**

The undersigned notes that the plaintiff does not identify a specific constitutional violation in his complaint. Instead, he recites eight interactions with various correctional officers which he allege amount to sexual harassment. All of these incidents involve alleged verbal actions on the part of the officers, combined in some cases with pointing to the plaintiff's or the officer's genitalia. The undersigned has construed the plaintiff's complaint as alleging a violation of the Eighth Amendment.

The Eighth Amendment, in three words, imposes the constitutional limitation upon punishments: they cannot be "cruel and unusual." The Supreme Court has interpreted these words "in a flexible and dynamic manner," Gregg v. Georgia, 428 U.S. 153, 171 (1976)(joint opinion), and has extended the Amendment's reach beyond the barbarous physical punishments at issue in the Court's earliest cases. See Wilkerson v. Utah, 99 U.S. 130 (1879); In re Kemmier, 136 U.S. 436 (1890). Today, the Eighth Amendment prohibits punishments which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain," Gregg, supra at 173, or are grossly disproportionate to the severity of the crime, Coker v. Georgia, 433 U.S. 584 (1977)(Plurality opinion), Weems v. United States, 217 U.S. w349 (1910). Among "unnecessary and wanton" inflictions of pain are those that are "totally without penological justification." Gregg, supra at 183; Estelle v. Gamble, 429 U.S. 97 (1976).

There can be no dispute that sexual abuse by a prison guard on an inmate may violate the Eighth Amendment. See Woods v. Ngo, 548 U.S. 81, 118 (2006)("Accordingly, those inmates who are sexually assaulted by guards have suffered grave deprivations of their Eighth Amendment rights."); Farmer v. Brennen, 511 U.S. 825, 834 (1984)(Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society.")(internal citations omitted); Schwenk v. Hartford, 204 F.3d 1187, 1197 (9th Cir.

7

2000)("A sexual assault on an inmate by a guard – regardless of the gender of the guard or of the prisoner – is deeply 'offensive to humanity dignity.'"(citing Felix v. McCarthy, 939 F.2d 699, 702 (9th Cir. 1991)); Boddie v. Schneider, 105 F.3d 857, 861 (2d Cir. 1997)("Because a sexual abuse by a corrections officer may constitute serious harm inflicted by an officer with a sufficiently culpable state of mind, allegations of such abuse are cognizable as Eighth Amendment claims.").

However, circuit courts consistently have held that sexual harassment, absent contact or touching, does not satisfy the objective requirement because such conduct does not constitute the unnecessary and wanton infliction of pain. See Morales v. Mackalm, 278 F.2d 126, 132 (2nd Cir. 2002)(allegations that prison guard asked prisoner to have sex with her and to masturbate in front of her and other female staffers did not rise to the level of Eighth Amendment violation); Barney v. Pulsipher, 143 F.3d 1299, 1311 n. 11 (10th Cir. 1986)(allegations that county jailer subjected female prisoners to severe verbal sexual harassment and intimidation was not sufficient to state a claim under the Eighth Amendment); Howard v. Everett, 2000 WL 268493, at *1 (8th Cir. March 10, 2000)(sexual comments and gestures by prison guards did not constitute unnecessary and wanton infliction of pain); Zander v. McGinnis, 1998 WL 384625, at 2 (6th Cir. Kune 19, 1998)(verbal abuse of mouthing "pet names" at prisoner for ten months failed to state an Eighth Amendment claim); Murray v. United States Bureau of Prisons, 1997 WL 24677, at 3 (6th Cir. January 28, 1997)(magistrate judge correctly held that verbal abuse in the form of offensive remarks regarding a transsexual prisoner's bodily appearance, transsexualism, and presumed sexual preference cannot state an Eighth Amendment claim). Moreover, some courts have held that even minor, isolated incidents of sexual touching combined with offensive sexual remarks do not rise to the level of an Eighth Amendment violation. See, e.g., Solomon v. Mich. Dep't of Corr., 478 F. App'x 318, 320-21 (6th Cir. 2012)(two "brief" incidents of physical contact during

8

pat-down searches, including touching and squeezing the prisoner's penis, coupled with sexual remarks, do not rise to the level of a constitutional violation); Jackson v. Madery, 158 F.App'x 656, 661 (6th Cir. 2005)(correction officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed the meet Eighth Amendment standards); Johnson v. Ward, 2000WL 659354, at 1 (6th Cir. May 11, 2000)(male prisoner's claim that a male officer placed his hand on the prisoner's buttock in a sexual manner and made an offensive sexual remark did not meet the objective component of the Eighth Amendment); Berryhill v. Schriro, 137 F.3d 1073. 1075 (8th Cir. 1989)(where inmate failed to assert that he feared sexual abuse, two brief touches to his buttocks could not be construed as sexual assault); Boddie v. Schneider, 105 F.3d 857, 859-61 (2d Cir. 1997)(court dismissed as inadequate prisoner's claim that female corrections officer made a pass at him, squeezed his hand, touched his penis, called him a "sexy black devil," pressed her breasts against his chest, and pressed against his private parts).

Briefly summarized, the plaintiff alleges that the defendants made the following comments to him: spread your legs and come down here and earn your bonus; after taking all of his extra blankets, told him if he was cold, he could cuddle up with his cellie; as he left the commissary announced over the public address system that he forgot his beef sausage and Vaseline; while in the commissary, asked him if he was there to get a beef sausage and Vaseline; pointed at his own (the officer's) penis and told him to take this and go piss for me; told him they were going to start a porno shop on the compound, and he was going to be the girl that runs it; and while leaving the visiting room, told him that he was going to be searched good because he would have a loaf of bread in his crotch and a 20 oz. soda up his ass. Therefore, even if true, the conduct by these correctional officers, while offensive and unprofessional, does not

9

arise to the level of an Eighth Amendment violation. Accordingly, the plaintiff's complaint is due to be dismissed for failure to state a claim upon which relief can be granted.

## IV. Recommendation

For the foregoing reasons, the undersigned recommends that the plaintiff's complaint be **DISMISSED WITH PREJUDICE**. In addition, the undersigned recommends that the plaintiff's Motion to Amend his complaint to add a request for monetary damages (Dkt. No. 18) and his Motion for Injunctive Relief (Dkt. No. 21), which is actually a motion for discovery, be **DENIED AS MOOT**

Within fourteen (14) days after being served with a copy of this recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections should also be submitted to the Honorable Gina M. Groh, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208.

The Clerk is directed to mail a copy of this Report and Recommendation to the pro se plaintiff by certified mail, return receipt requested, his last known address as shown on the docket sheet.

DATED: October 28, 2014

_____
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE